**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

v.   Case No. 8:16-cv-1254-T-35AAS
  8:08-cr-172-T-35AAS

**PAUL ROBERT GUNTER**
_____/

# O R D E R

This cause comes before the Court on Gunter's motion under 28 U.S.C. 2255 to vacate and supporting memorandum, the United States' response, and Gunter's reply, as supplemented. (Docs. 1, 8, 15, 25 and 42) Upon consideration of the papers and in accordance with the *Rules Governing Section 2255 Cases in the United States District Courts*, it is **ORDERED** that the motion to vacate is **DENIED**.

A jury found Gunter guilty of all but one count of a 36-count indictment that charged Gunter and five others with various offenses relating to two investment-fraud schemes. Gunter is imprisoned for 300 months. The convictions and sentences were affirmed on appeal. *United States v. Odoni, et. al.*, 782 F.3d 1226 (11th Cir.), *cert. denied*, 135 S. Ct. 2335 (2015). As summarized by the circuit court, "Gunter provided escrow services and managed bank accounts in connection with the two investment-fraud schemes." 782 F.3d at 1234  The United States correctly summarizes Gunter's involvement in the schemes as follows (Doc. 15 at 12–13) (citations to trial transcript omitted):

> Gunter, who was an old friend of [co-conspirator] Pope, took over the banking and administrative functions of the fraudulent stock scheme and managed them out of Florida. This role required Gunter to establish several

escrow companies and bank accounts to receive the investors' money. In addition, after investors agreed to purchase stock shares, Gunter, through his daughter, sent paperwork to the investors that explained where the investors should send payments for the shares they had agreed to buy. Once investors wired payments to the designated bank accounts, Gunter's daughter contacted associates (initially in Costa Rica, the headquarters of another co-conspirator, Larry Hartman) who prepared board resolutions authorizing the issuance of stock certificates to those investors. Based on the board resolutions, a transfer agent produced stock certificates for those investors, and Gunter's daughter, Zibiah Gunter, sent the certificates to the investors via UPS delivery.

Zibiah Gunter acted at the direction of Gunter, Pope, and or Hartman, and redistributed the funds that the investors had wired into the escrow bank accounts. The sales teams, located in Spain, who sold the fraudulent stock, also referred to as "advisor groups," typically received sixty percent or more of the gross receipts, and Gunter, Hartman, and Pope each took shares of the remaining funds. No one told the investors about this redistribution of their investment principal. Ultimately, more than $127 million in investor funds came through the various bank accounts that Gunter set up in furtherance of the fraudulent-stock scheme.

Gunter moves under 28 U.S.C. § 2255 (Doc. 1) to vacate and challenges the validity of his convictions. Gunter asserts four grounds for relief: one claim of trial court error, two claims of ineffective assistance of trial counsel, and one claim of ineffective assistance of appellate counsel. Gunter is not entitled to relief.

## I. TRIAL COURT ERROR

In Ground One Gunter challenges the constitutionality of the mail fraud and wire fraud statutes under which he was convicted. Gunter contends that Congress unconstitutionally delegated legislative authority to the judiciary to define an essential element of each crime. He argues that this Court supplied a definition, which "transforms the statute into a Bill of Attainder and creates sanctions in an *Ex Post Facto* manner." (Doc. 1 at 13) The United States correctly argues that Gunter forfeited this claim by not both asserting an objection at trial and raising the claim on direct appeal. "The general

rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). *See also Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989) ("In general, a defendant must assert an available challenge to a sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding."), *cert. denied*, 494 U.S. 1018 (1990). Gunter cannot now present his claim in a post-conviction proceeding. Nonetheless, the claim lacks merit for the reasons argued in the response. (Doc. 15 at 7–15)

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Gunter claims ineffective assistance of counsel, which is a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective

assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Gunter must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Gunter must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Gunter cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

**Grounds Two and Four:**

Gunter faults trial counsel for not seeking to sever the counts in the indictment (Ground Two). Gunter's former trial counsel attest (1) that they considered filing a motion to sever but determined that "we could not make the showing required by Federal Rule of Criminal Procedure 14" and (2) that the severance issue was rendered moot when the United States withdrew the superseding indictment that had added additional charges and two additional defendants. (Doc. 15-1 at 1 and 4 Counsels' Affidavits at ¶ 6) Trial counsel's subsequent motion, based on prejudicial misjoinder, to sever Count Two from the indictment was denied following a hearing. (Docs. 516 and 548 in 08-cr-172)

Gunter also complains that the alleged misjoinder of counts precluded him from being able to "selectively testify" about some charges but not others. As this Court determined when denying the motion sever, joinder of the charged conspiracies and related substantive counts was appropriate because they were of a similar nature and

were connected by a similar scheme or plan because each offense involved a similar "boiler-room" fraud scheme.

Gunter faults appellate counsel for not raising an improper joinder claim on direct appeal (Ground Four). As discussed above, an improper joinder claim would have been a weak issue to raise on appeal. *Strickland* governs an ineffective assistance of appellate counsel claim. Proof that appellate counsel omitted an issue on appeal is not proof of deficient performance because counsel need not raise every nonfrivolous issue. *Jones v. Barnes*, 463 U.S. 745 (1983); *Eagle v. Linahan*, 279 F.3d 926, 940 (11th Cir. 2001) (*citing Barnes*). An appellate advocate provides effective assistance by winnowing out weaker claims and focusing on the appellate claims most likely to prevail, as *Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001), *cert. denied* 535 U.S. 926 (2002), explains:

> It is difficult to win a *Strickland* claim on the grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances. We have emphasized that even in a death penalty case, counsel must be "highly selective about the issues to be argued on appeal . . . ." *United States v. Battle*, 163 F.3d 1, 1 (11th Cir. 1998). The district court, having considered the record and [appellate counsel]'s testimony during the state post-conviction proceeding, found that [appellate counsel] had carefully considered many of the claims now raised in appeal, but ultimately chose to pursue the claims he felt were most likely to prevail and winnow out the arguments he thought were less persuasive.

Moreover, "the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues." *Eagle*, 279 F.3d at 940 (*citing Barnes*).

Additionally, in his supporting memorandum (Doc. 8) Gunter adds another claim that he labels "Claim 4.2 — Suppression" in which he alleges that appellate counsel failed

to appeal the Court's failure to suppress evidence. The United States correctly argues (Doc. 15 at 24–25) that "Claim 4.2" is time-barred and is also meritless because the suppression issue was thoroughly briefed and addressed on appeal. *United States v. Odoni*, 782 F.3d at 1237–41.

In conclusion, trial counsels' lack of success in severing some counts was not due to deficient performance, and appellate counsel's strategic decision not to argue a misjoinder issue on appeal was likewise not deficient performance. As a consequence, Gunter is not entitled to relief under either Ground Two or Ground Four.

**Ground Three:**

Gunter alleges that trial counsels' "chosen strategy reveals a fundamental misperception of either the facts, the federal fraud laws, or both." (Doc. 1 at 14) Gunter argues that "[t]he defense strategy seemed to be that Gunter was unaware of the fraud[, b]ut that the definition of a scheme to defraud is so effusive that, on the evidence available, this defense was likely futile." Id. The United States correctly characterizes this claim as follows (Doc. 15 at 26) (ellipsis original):

> Gunter claims a better defense would have been that he "may have known of the specific conduct, which constitutes the fraud, but he did not realize that he had a duty to act differently," or stated another way by Gunter, that his defense should have been that he "sincerely believed that he needed only comply with the literal terms of the agreement, rather tha[n] search beneath the surface of the transaction . . . so that his duties to the investor ended with proper delivery of the documents regardless of the substance of the transaction or how the transactions were induced." D-cv-8 at 14.

Gunter's claim fails because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690–91.

> To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or "what is prudent or appropriate, but only what is constitutionally compelled."

*Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir.2000) (*en banc* ) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also, Mincey v. Head*, 206 F.3d 1106, 1143 (11th Cir. 2000) ("We must respect the counsel's tactics if they seem 'reasonable considering all the circumstances.'" (quoting *Strickland v. Washington*)).

Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness to call and which defense to present. *See e.g., Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (*en banc*). The term "strategy" is broadly defined. "By 'strategy,' we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." *Chandler v. United States*, 218 F.3d at 1314 n.14. *See also Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others."), *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."), and *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir.1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).

Gunter's assertion that counsel misunderstood either the law, the facts, or both is, as the United States argues (Doc. 15 at 26), "belied by counsels' affidavits in which they attest that their defense strategy was the product of a trusted relationship with Gunter, developed over a very long period of time — nearly five years — which allowed for the full review of the carefully catalogued discovery materials, consideration of all prosecution theories, and research and exploration of all defenses available. See Counsel Aff., ¶¶ 9–11." Gunter does not, nor could he, argue that counsels' chosen defense strategy was "unreasonable." The chosen defense strategy cannot fairly be judged in hindsight as "unreasonable" simply because it did not produce an acquittal. *See Strickland v. Washington*, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). Gunter is not entitled to relief under Ground Three.

Because each ground is refuted by the record, no evidentiary hearing is required. *Ramirez v. United States*, 260 Fed. App'x 185, 187 (11th Cir. 2007) (citing *Smith v. Singletary*, 170 F.3d 1051, 1053–54 (11th Cir 1999)).

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**. The **CLERK** is directed to enter a judgment against Gunter, to **CLOSE** this case, and to enter a copy of this Order in the criminal action.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Gunter is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of

his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Gunter must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Gunter is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Gunter must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, this 24th day of September, 2019.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE